#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
#### CLARKSBURG

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　　**Criminal Case No.: 1:20-CR-50**
　　　　　　　　　　　　　　　　　　　　　　**(JUDGE KLEEH)**

**TAYLOR WASHINGTON**,

        **Defendant.**

#### REPORT AND RECOMMENDATION RECOMMENDING THAT DEFENDANT TAYLOR WASHINGTON'S MOTION TO SUPPRESS BE DENIED

Presently pending before the undersigned Magistrate Judge is Defendant's Motion to Suppress Evidence [ECF No. 27], filed on November 9, 2020. By Order dated November 10, 2020 [ECF No. 29], United States District Judge Thomas S. Kleeh referred the motion to the undersigned for conducting a hearing and entering a report and recommendation as to disposition of the motion.

The undersigned also is in receipt of the Government's Response in Opposition to Defendant's Motion, filed on November 10, 2020 [ECF No. 30], the Government's brief citing further authority, filed on November 12, 2020 [ECF No. 33] and a supplemental citation to authority by Defendant shared with the undersigned on November 12, 2020 by electronic mail (not docketed). The undersigned conducted a hearing on Defendant's motion on November 12, 2020, at which the Court heard witness testimony, accepted exhibits into evidence, and heard the argument of counsel for both Defendant and the Government.

Based on a detailed review of Defendant's Motion [ECF No. 27], the Government's Response [ECF No. 30], the parties' respective supplemental citations to authority, the exhibits introduced into evidence at the hearing on Defendant's motion, and the testimony given by

witnesses and oral argument of counsel offered at said hearing, the undersigned **RECOMMENDS** that Defendant's motion be **DENIED** as set forth herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Taylor Washington ("Defendant") stands accused in a single-count indictment which a Grand Jury returned against him on September 1, 2020. [ECF No. 1]. Defendant is named in the Indictment with the offense of Unlawful Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

Defendant was detained by the Bridgeport, West Virginia Police Department ("BPD") in the early morning hours of July 5, 2020. Defendant and a companion, Kirstein Odell-Minor ("Odell-Minor), had attempted to check in to a Super 8 Motel in Bridgeport. After denying Defendant and Odell-Minor a room, the desk clerk called 911 to report that Defendant had been screaming and yelling at Odell-Minor outside of the motel. In response to the 911 call, BPD Officer William Cunningham ("Officer Cunningham") arrived on the scene and detained Defendant. During this interaction with Defendant, Officer Cunningham saw a firearm in plain view on top of a duffel bag which Defendant had been carrying. With Defendant's prior felony conviction, the possession of this firearm gave rise to the Indictment in this matter.

In his motion to suppress, Defendant argues that Officer Cunningham did not have reasonable suspicion to detain him. Thus, according to Defendant, any evidence later obtained by law enforcement pursuant to detention – here, the firearm – must be suppressed. The Government, on the other hand, opposes Defendant's motion, arguing that Officer Cunningham had reasonable suspicion to detain Defendant such that the evidence concerning the firearm is admissible. The

issue before the Court, then, is rather narrow – whether there was reasonable suspicion under the circumstances to detain Defendant.[1]

## II. SUMMARY OF TESTIMONY

During the aforementioned suppression hearing on November 12, 2020, the Court heard sworn testimony from the following witnesses: (1) Officer Jason Carey of BPD, (2) Officer Cunningham, and (3) Defendant himself.

The Court also received into evidence the following: (1) Defendant's Exhibit A-1, an unmarked Google Maps depiction of the area of the detention [ECF No. 32-1], (2) Defendant's Exhibit A-2, a marked-up Google Maps depiction of the area of the detention [ECF No. 32-2], (3) Defendant's Exhibit B, the CAD incident report from the 911 call involving Defendant here [ECF No. 32-3], (4) Defendant's Exhibits C-1 through C-16, various photos of the area of Defendant's interaction with BPD [ECF Nos. 32-4 through 34-19], (5) Government's Exhibit A, an audio recording of the 911 call (not posted to ECF), (6) Government's Exhibit B, a collection of BPD arrest records, officer reports, and 911 records [ECF No. 30-2], (7) Government's Exhibit C, a collection of BPD records of the incident [ECF No. 30-3], (5) Government's Exhibit D, footage from Officer Carey's dash cam (not posted to ECF), (6) Government's Exhibit E, wide-view footage from Officer Carey's dash cam (not posted to ECF), (7) Government's Exhibit F, footage from Officer Carey's backseat cam (not posted to ECF), (8) Government's Exhibit G, footage from

---

[1] The parties in their briefs also argue as to another issue, namely, whether Officer Cunningham had consent to search the duffel bag Defendant was carrying. The arguments center on discovery of the firearm at issue in an <u>enclosed</u> duffel bag. However, undisputed testimony from law enforcement during the hearing before the undersigned instead was about how the firearm was <u>in plain view on top of the duffel bag</u> when Officer Cunningham first observed the firearm. This would obviate any argument about whether law enforcement had proper consent to search the duffel bag. Defendant did not put on evidence at the hearing or make argument before the undersigned about whether law enforcement had proper consent to search the bag. Thus, the undersigned does not address the issue of consent to search the duffel bag in question, as it appears Defendant has abandoned that argument.

3

Officer Cameron Turner's dash cam (not posted to ECF) (9) Government's Exhibit H, wide view footage from Officer Turner's dash cam (not posted to ECF), and (10) Government's Exhibit I, footage from Officer Turner's back seat cam (not posted to ECF).

According to Officer Cunningham's testimony at the suppression hearing,[2] the officer encountered Defendant, who was on foot outside of the Super 8 Motel in Bridgeport, West Virginia, on July 5, 2020. Specifically, on that date, Officer Cunningham responded to a 911 call at 5:39 a.m. and arrived only minutes later [11:04:43]. The call concerned two subjects who were reported by the 911 caller, the desk attendant at the Super 8, to be screaming and arguing outside of the Super 8. [11:02:38 to 11:03:20]. See also Government's Exhibit A. The subjects were described as a black male and a white female. Id. When Officer Cunningham arrived on the scene, he saw a white female, who he later learned was Odell-Minor, sitting on a corner, beside the street. [11:03:22 to 11:03:34]. At this time, Officer Cunningham also saw Defendant and went directly to Defendant to question him. [11:03:35 to 11:04:17]. Defendant appeared to have seen Officer Cunningham, start walking away quickly, behind some trees, and into an adjacent parking lot at a neighboring Burger King restaurant. Id. Defendant appeared to be walking toward a waiting taxi. Id.

Officer Cunningham told Defendant to stop. [11:07:20 to 11:07:34]. Defendant was carrying a large duffel bag. Id. Officer Cunningham exited his vehicle and proceeded toward Defendant. [11:07:43]. Defendant put down the duffel bag near the waiting taxi and walked toward Officer Cunningham. [11:07:55 to 11:08:12]. Defendant was nervous, sweating and speaking rapidly. [11:09:12 to 11:09:25]. Officer Cunningham eventually discovered drugs and drug

---

[2] The citations here to times in brackets correspond to the times of the Court's archived audio recording of the suppression hearing on November 12, 2020, which is located on the section of the Court's intranet site for FTR recordings.

paraphernalia on Defendant as Defendant was fidgeting with items inside his clothing. [11:11:50 to 11:13:58]. Officers placed Defendant in handcuffs and placed him in a police cruiser. [11:15:55 to 11:16:04].

During these events, the taxi had left and the duffel bag Defendant was carrying still was sitting on the ground. [11:16:38 to 11:16:50]. Officer Cunningham walked toward the bag, and before picking it up, saw a rifle – evident by its barrel and magazine – positioned on top of the bag, under a blue towel. [1:17:35 to 1:18:40]. Officer Cunningham emptied the rifle of its ammunition and took it into police possession. [11:18:42 to 11:19:50]. Officers ultimately checked Defendant's background and learned of his felony record, which would make possession of a firearm impermissible.

### III. LEGAL ISSUES AND ANALYSIS

The question before the Court is whether Officer Cunningham had reasonable suspicion to detain Defendant, as detention of Defendant led to the officer's discovery of the firearm.

Defendant contends that the facts here do not give rise to reasonable suspicion and lawful detention. Thus, according to Defendant, evidence (here, the firearm) obtained thereafter as a result must be suppressed. On the contrary, the Government points out that the 911 call from the Super 8 attendant concerning a domestic-type argument – combined with Officer Cunningham's on-the-scene corroboration of the people described in the 911 call and Defendant's attempt at a quick departure from the scene – is enough to give rise to reasonable suspicion for the detention.

As a threshold matter, the undersigned notes the well-established principle that the Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Further, instructive caselaw provides that reasonable suspicion arises from

circumstances in the run-up to a stop or search. Ornelas v. United States, 517 U.S. 690, 696 (1996). A court is to review the stop or search "from the standpoint of an objectively reasonable police officer." Id. Moreover, permissible are "brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." Navarette v. California, 572 U.S. 393, 396 (2014) (citations and quotations omitted).

Also well-established is the exclusionary rule – that a court should exclude evidence obtained by dint of law enforcement's unlawful arrest or search. See Mapp v. Ohio, 367 U.S. 643 (1961). Relatedly, however, a court should suppress evidence in a criminal matter "only … where its deterrence benefits of exclusion outweigh its substantial social costs." Hudson v. Michigan, 547 U.S. 586, 591 (2006) (citations and quotations omitted).

Counsel for both parties cited the same Fourth Circuit case as perhaps the most on-point authority concerning the character of a 911 call and whether it gives rise to reasonable suspicion. See United States v. Kehoe, 893 F.3d 232 (4th Cir. 2018). To the extent which Kehoe and related authority establishes that a 911 call from an identifiable (non-anonymous) caller establishes the presumption of reasonable suspicion, the undersigned finds that Defendant did not rebut such a presumption here. Here, taking in the totality of the facts and circumstances from testimony and exhibits introduced into evidence, the undersigned finds that there was reasonable suspicion for Officer Cunningham to detain Defendant, such that the detention was lawful and evidence resulting therefrom and giving rise to the Indictment should not be suppressed.

In this case, Officer Cunningham responded to a 911 call, in which the caller – the Super 8 desk clerk – identified herself, her location, and her place of employment. The caller described a couple by their race and gender, and described activity happening between them (sustained

yelling and screaming) which would be objectively concerning. In short, the call to 911 did not want for verifiability, veracity, accuracy, or urgency. There was nothing about the call which appears to have been ill-intentioned or misleading. The caller was identifiable, appears to have been reliable, and responding to an objectively concerning scenario.

When Officer Cunningham arrived on the scene, he saw two people as described in the 911 call, as relayed to him by dispatch. The descriptions of the two people were consistent with their descriptions from the call. While he did not testify that he witnessed a verbal altercation in progress, or any evidence of violence, Officer Cunningham need not have necessarily seen such in order to have reasonable suspicion to detain Defendant. After all, in addition to seeing the people as described in the call, upon arriving only minutes after being dispatched, Officer Cunningham noticed Defendant looking in his direction and walking quickly away. Arriving in the midst of what may have reasonably been perceived to be a problematic domestic dispute, and taking all of this into account, it would have been surprising, and arguably irresponsible, for Officer Cunningham to do anything but detain Defendant in the fashion in which he did.

Based upon Officer Cunningham's testimony, which the undersigned finds to be thorough and credible, the undersigned concludes that his actions were customary and judicious given the facts at hand. There is nothing about Officer Cunningham's actions which appears to have been rash or problematically executed. Thus, the undersigned finds that the officer's detention of Defendant was lawful and rational under the circumstances, and that he had reasonable suspicion to do so.

## IV. CONCLUSION

For the reasons set forth herein, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress Physical Evidence [ECF No. 27] be **DENIED.**

Case 1:20-cr-00050-TSK-MJA   Document 34   Filed 11/13/20   Page 8 of 8   PageID #: 191

Any party may, **before the time of the pre-trial conference scheduled in this matter at 3:00 p.m. on Monday, November 16, 2020**,[3] file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of Court is **DIRECTED** to transmit copies of this Report and Recommendation to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted November 13, 2020.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

---

[3] Although parties usually have 14 days to respond to a Report and Recommendation such as this, that is a maximum time to respond, not a minimum. In this matter, the pretrial conference is scheduled for November 16, 2020 and the jury selection and trial for December 8, 2020.